<table>
<tr><td colspan="3" align="center">Estado Libre Asociado de Puerto Rico<br>TRIBUNAL DE APELACIONES<br>PANEL I</td></tr>
<tr>
<td>RAPHAEL EDUARDO ESPINET ORTIZ, ANNETTE MARIE ESPINET ORTIZ, CARMEN DEL PILAR ESPINET ORTIZ, GABRIEL ANTONIO ESPINET ORTIZ, MARÍA DE LOS ÁNGELES ESPINET ORTIZ Y GERARDO JAVIER ESPINET ORTIZ<br><br>**APELANTES**<br><br>v.<br><br>LOURDES ESPINET ORTIZ<br><br>**APELADA**</td>
<td>KLAN202401028</td>
<td>*Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm. SJ2024RF00718<br><br>Sobre:<br>Ley de la Carta de Derechos y la Política Pública del Gobierno a favor de los Adultos Mayores (Ley Núm. 121-2019)<br><br>Tutela</td>
</tr>
</table>

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio, y el Juez Rodríguez Flores.

Pagán Ocasio, juez ponente.

## SENTENCIA

En San Juan, Puerto Rico, a 22 de enero de 2025.

### I.

El 18 de noviembre de 2024, el señor Raphael Eduardo Espinet Ortiz, la señora Annette Marie Espinet Ortiz, la señora Carmen Del Pilar Espinet Ortiz, el señor Gabriel Antonio Espinet Ortiz, la señora María De Los Ángeles Espinet Ortiz y el señor Gerardo Javier Espinet Ortiz (en conjunto, parte apelante) presentaron un recurso de apelación por el que solicitaron que revoquemos la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan, (TPI o foro primario) el 30 de septiembre de 2024, y notificada y archivada digitalmente en autos ese mismo día.[1]

En la misma, el foro primario declaró Ha Lugar la *Moción de Sentencia Sumaria* presentada por la señora Lourdes Espinet Ortiz (señora Espinet Ortiz o apelada) el 16 de agosto de 2024 con relación

---

[1] Apéndice de la *Apelación*, Anejo XIX, págs. 296-304.

a la causa de acción sobre petición de incapacidad y tutela.[2] Consecuentemente, el TPI desestimó *con perjuicio* la solicitud conjunta para declarar incapaz y nombrarle un tutor legal al señor Gabriel Rafael Espinet Colón (señor Espinet Colón) y a la señora Ana Sylvia Ortiz Molina (señora Ortiz Molina). El foro *a quo* también declaró No Ha Lugar la solicitud de Orden de Protección, al amparo de la *Carta de Derechos y la Política Pública del Gobierno a favor de los Adultos Mayores*, Ley Núm. 121 del 1 de agosto de 2019 (Ley Núm. 121-2019), según enmendada, 8 LPRA secs. 1511 *et seq.*).

El mismo día en que radicó el recurso, la parte apelante radicó, junto al recurso de apelación, una *Moción para que se permita presentar escrito en exceso de páginas*.

Ante ello, emitimos una *Resolución* el 21 de noviembre de 2024, declarando Ha Lugar la solicitud para presentar el recurso de apelación en exceso de páginas. Además, les concedimos a la apelada y al Procurador General de Puerto Rico hasta el 18 de diciembre de 2024 para presentar su alegato en oposición.

La apelada presentó una *Oposición a Escrito de Apelación* junto a una *Solicitud para presentar en exceso al límite de páginas* el 18 de diciembre de 2024.

Por su parte, la Oficina del Procurador General de Puerto Rico, en representación de la Procuradora de Asuntos de Familia (Procuradora), radicó una *Solicitud de Desestimación* el mismo día.

El 26 de diciembre de 2024, emitimos una *Resolución* autorizando la presentación de la oposición al escrito de apelación en exceso de las páginas reglamentarias.

Con el beneficio de la comparecencia de las partes, damos por perfeccionado el recurso y, en adelante, pormenorizamos los hechos procesales atinentes al recurso de apelación.

---

[2] *Íd.*, Anejo XIV, págs. 222-260.

**II.**

El caso de marras tiene su génesis el 31 de mayo de 2024 cuando la parte apelante presentó una demanda intitulada *Petición de incapacidad judicial, tutela y de orden de protección bajo [la] Ley 121, remedios provisionales y consolidación.*[3] Por medio de esta, la parte apelante alegó que, el 20 de febrero de 2020, el señor Espinet Colón y la señora Ortiz Molina otorgaron unas escrituras de poder duradero ante el notario público Miguel Oppenheimer por las que designaron a la apelada como su apoderada y le confirieron poderes generales para comprar bienes, asumir deudas, manejar cuentas bancarias, entre otros.[4] De la antedicha petición se desprende que la parte apelante expuso que había acudido a la Administración de Veteranos donde le informaron que, según constaba en el expediente desde el año 2020, el señor Espinet Colón sufría de demencia crónica y otras condiciones, asunto sobre el cual sostuvo la parte apelante que la apelada no le había informado. Planteó también que, durante una visita a las oficinas del Seguro Social, le indicaron a la parte apelante que la apelada constaba como tutora del señor Espinet Colón y que para dicha gestión había entregado una certificación médica donde establecía que el señor Espinet Colón padecía de la condición de Alzheimer's y demencia.[5] Sin embargo, expuso la parte apelante que ocurrieron una serie de actos que constituyeron explotación financiera de sus padres por parte de la apelada, desde el año 2020, incluyendo el traspaso de una residencia y hogar seguro, y la creación de una cuenta bancaria conteniendo dinero proveniente de la Administración de Veteranos.

La parte apelante también arguyó que la apelada restringió el acceso a sus padres y tomó decisiones unilaterales como el cuidado

---

[3] *Íd.*, Anejo I, págs. 1-77.
[4] *Íd.*, Anejo XIV, págs. 236-248.
[5] *Íd.*, pág. 252.

de estos y sacarlos del país sin notificarle a la parte apelante. Con relación a todo lo anterior, y a tenor con la Ley Núm. 121-2019, *supra*, la parte apelante solicitó una Orden de Protección en contra de la apelada y en beneficio de sus padres, el señor Espinet Colón y la señora Ortiz Molina con 97 años y 91 años, respectivamente.

Por otro lado, mediante la referida petición, la parte apelante suplicó que se decretara al señor Espinet Colón y la señora Ortiz Molina como incapaces legalmente y que se nombrara al señor Raphael Eduardo Espinet Ortiz como tutor legal de ambos. También solicitó que se consolidara con el caso de epígrafe el pleito sobre Orden de Protección bajo el alfanumérico SJL 121-3948 presentado por la apelada, en representación del señor Espinet Colón, y en contra del señor Gerardo Javier Espinet Ortiz. Sobre esta última, indicó la parte apelante que, el foro primario emitió una Orden de Protección Ex Parte en contra del señor Gerardo Javier Espinet Ortiz.[6]

Posteriormente, el Ministerio Público, por conducto de la Procuradora, radicó un *Primer informe fiscal en torno a petición de incapacidad judicial, tutela y orden de protección bajo [la] Ley 121, remedios provisionales y consolidación*.[7] En este, arguyó que no intervenía en los procedimientos bajo la Ley Núm. 121-2019, *supra.* Sin embargo, le recomendó al foro primario ordenar la intervención de la Oficina de las Personas de Edad Avanzada para que realizaran la investigación correspondiente en protección de los adultos mayores, ante las alegaciones de posible explotación financiera. Por otro lado, y por medio de dicho informe, el Ministerio Público por conducto de la Procuradora de Asuntos de Familia compareció en el procedimiento de incapacitación judicial en virtud del Artículo 112 del *"Código Civil de Puerto Rico" de 2020* (Código Civil de 2020), Ley

---

[6] Apéndice de la *Oposición a Escrito de Apelación*, Anejo 3, págs. 12-15.
[7] Apéndice de la *Apelación*, Anejo VII, págs. 190-193.

Núm. 55 de 1 de junio de 2020, según enmendada, 31 LPRA sec. 5633. Con relación a ello, solicitó del foro primario que se presentara copia de los poderes duraderos otorgados por el señor Espinet Colón y la señora Ortiz Molina, conforme al Artículo 1600A del *"Código Civil de Puerto Rico" Edición de 1930*, 31 LPRA ant. sec. 4421a. Añadió que la solicitud de incapacidad y tutela debía ser atendida de forma independiente; es decir que, los pleitos del señor Espinet Colón y de la señora Ortiz Molina fuesen atendidos de forma separada. Sin embargo, planteó que, en aras de la economía procesal, estos pudiesen consolidarse; y adelantó los documentos que deben acompañar una solicitud de incapacidad.

Por su parte, la apelada radicó una *Contestación a Demanda y Reconvención* el 17 de julio de 2024, en la que negó las alegaciones sobre alegada explotación financiera.[8] Además, por medio de la reconvención presentada en contra de la parte apelante, solicitó una serie de remedios incluyendo que se ordenara a la Oficina del Procurador de Personas de Edad Avanzada a preparar un informe social, y conforme al mismo, se emitiera una Orden de Protección para prohibirle a la parte apelante de disponer de cualquier forma los bienes de sus padres, el señor Espinet Colón y la señora Ortiz Molina. Asimismo, suplicó del foro primario que el señor Gerardo Espinet Ortiz devolviese la cantidad de $67,288.20 por supuesta explotación financiera, y la nombrara a ella como tutora de sus padres, el señor Espinet Colón y la señora Ortiz Molina.

El 1 de agosto de 2024, el Ministerio Público por conducto de la Procuradora radicó un *Segundo informe fiscal en cumplimiento de orden* mediante el cual reiteró los mismos planteamientos del primer informe inclusive que se ordenara la intervención inmediata del Departamento de la Familia y a la Oficina de Personas de Edad

---

[8] *Íd.*, Anejo VIII, págs. 194-209.

Avanzada, y que se les concediera a estas un término de veinte (20) días para la presentación del informe con hallazgos y recomendaciones para tener una mejor idea sobre la necesidad de dar curso al procedimiento de incapacitación y nombramiento de tutor.[9]

El Ministerio Público por conducto de la Procuradora presentó una *Moción aclaratoria en torno al segundo informe fiscal* el 5 de agosto de 2024 por la que arguyó que los emplazamientos del señor Espinet Colón y de la señora Ortiz Molina tenían que diligenciarse nuevamente, ya que el procedimiento de incapacitación y nombramiento de tutor de ambos no podían atenderse en un mismo caso.[10]

Posteriormente, la parte apelante radicó una *Contestación a la Reconvención* el 9 de agosto de 2024 donde sostuvo que los poderes duraderos fueron revocados el 10 de noviembre de 2023 por medio de las escrituras número 308 y 309 ante la notaria Magda V. Alsina Figueroa.[11]

El 16 de agosto de 2024, la apelada presentó una *Moción de Sentencia Sumaria* en la que solicitó del TPI que determinara que no procedía la solicitud de incapacidad judicial y nombramiento de tutor del señor Espinet Colón y de la señora Ortiz Molina,[12] y, consecuentemente, declarara No Ha Lugar la demanda. En apretada síntesis, sostuvo que, a través de los informes radicados por el Ministerio Público, se destacaba que el procedimiento de incapacidad judicial no podía ser atendido en un mismo caso cuando involucrara a más de una persona. Además, indicó la apelada que para evitar conflictos que interfieran con la decisión

---

[9] *Íd.*, Anejo X, págs. 211-214.
[10] *Íd.*, Anejo XII, pág. 216.
[11] *Íd.*, Anejo XIII, págs. 217-221.
[12] *Íd.*, Anejo XIV, págs. 222-260.

judicial, procedía separar las alegaciones sobre explotación financiera del pleito de incapacidad.

Luego de ello, el 19 de agosto de 2024, la apelada radicó una *Moción en Cumplimiento de Orden*.[13] En esta, sostuvo que era conveniente que la parte apelante cuestionara la validez de los poderes duraderos otorgados, pero presumiera la validez de la revocación de los mismos. Añadió que el señor Raphael Eduardo Espinet Ortiz, quien solicitó ser tutor del Espinet Colón y de la señora Ortiz Molina, había colocado en venta su residencia principal en Trujillo Alto y adquirió otra en Florida, Estados Unidos, contrario al Artículo 144 (h) del Código Civil de 2020, *supra*, sec. 5702. Por lo tanto, solicitó del foro *a quo* que desestimara la demanda, y ordenara a la parte apelante a pagar $5,000.00 en concepto de costas, honorarios y cualesquiera otros gastos incurridos por la apelada.

Por su parte, la parte apelante presentó una *Oposición a Moción de Sentencia Sumaria* el 5 de septiembre de 2024 en la que planteó hechos en controversia y sostuvo que la solicitud de sentencia sumaria incumplió con la Regla 36.3 (a) de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3 (a).[14] Expuso también que la apelada tenía que probar la capacidad mental de la señora Ortiz Molina y del señor Espinet Colón y que no requerían de un tutor. Expuso que ello se debía a que la propia apelada admitió las alegaciones 89 y 90 de la demanda, las cuales establecen que:

> 89. Don Gabriel R. Espinet tiene 97 años y aunque este aún mantiene cierta capacidad mental, este ha sido diagnosticado con demencia crónica y posiblemente Alzehimer's. Don Gabriel está incapacitado para regir su persona y sus bienes; y necesita asistencia continua para su cuidado diario, cuidado médico y para manejar sus finanzas y otros asuntos.
>
> 90. Doña Ana Sylvia Ortiz Molina, tiene 91 años y aunque tiene cierta capacidad mental, esta necesita asistencia continua para su cuidado diario, cuidado médico y para manejar sus finanzas y otros asuntos. Por las razones expuestas en la parte de los hechos en cuanto a las

---

[13] Apéndice de la *Oposición a Escrito de Apelación*, Anejo 7, págs. 22-27.
[14] Apéndice de la *Apelación*, Anejo XVIII, págs. 265-295.

relaciones entre las partes, el peticionario actualmente no tiene un diagnóstico médico pericial sobre su condición mental, pero la incapacidad de Doña Ana para regir su persona y bienes es clara y evidente.[15]

La parte apelante explicó también que la apelada incluyó como hecho incontrovertido en el párrafo 35 la certificación médica emitida por el doctor Eugenio R. Barbosa Del Valle (doctor Barbosa),[16] quien certificó que el señor Espinet Colón sufría de demencia y Alzheimer's, y, por ende, no era capaz de manejar sus finanzas. Según la parte apelante, este fue el documento que la apelada llevó a las oficinas del Seguro Social, donde ella constaba como tutora de su padre. Además, indicó que, conforme a la reconvención presentada por la apelada, esta entendía que sus padres necesitaban un tutor, ya que ella solicitó por medio de la aludida reconvención que la nombraran a ella como tutora de ambos. Alegó la parte apelante que, no obstante, la apelada presentó unas notas de progreso del doctor Barbosa y que estas establecían que el señor Espinet Colón aún tenía capacidad de entender y reconocer la información proporcionada.[17]

Luego de ello, el TPI emitió una *Sentencia* el 30 de septiembre de 2024, notificada y archivada digitalmente en autos ese mismo día. Por medio de esta, el foro primario declaró No Ha Lugar la petición de Orden de Protección presentada en contra de la apelada y en beneficio del señor Espinet Colón y la señora Ortiz Molina, al amparo de la Ley Núm. 121-2019, *supra*. Ello, por entender, de haber procedido, debió de haberse presentado dicha causa de acción en una Sala Municipal y no una Sala Superior del foro primario.

Por medio de dicho dictamen, el foro *a quo* también declaró Ha Lugar la *Moción de Sentencia Sumaria* presentada por la apelada con relación a la causa de acción sobre petición de incapacidad y tutela,

---

[15] *Íd.*, Anejo I, págs. 16-17.
[16] *Íd.*, Anejo XIV, págs. 229-230.
[17] *Íd.*, págs. 253-254.

y, consecuentemente, desestimó *con perjuicio* la solicitud conjunta para declarar incapaz y nombrarle un tutor legal al señor Espinet Colón y a la señora Ortiz Molina. Sobre este particular, resolvió el foro primario que:

> Se aclara, no obstante, que una vez atendida la validez de las revocaciones de los poderes duraderos en pleitos individuales e incoados a esos fines y la misma ser sostenida judicialmente, no existe impedimento para que el particular que lo entienda procedente solicite en pleitos individuales los remedios solicitados en este caso.[18]

De igual modo, el foro primario formuló los siguientes hechos incontrovertidos:

1. Las partes de epígrafe son los hijos de Gabriel Rafael Espinet Colón y Ana Sylvia Ortiz Molina.

2. Desde finales del 2019 que los señores Gabriel Rafael Espinet Colón y Ana Sylvia Ortiz Molina regresaron a Puerto Rico, ha sido la Demandada, Lourdes Espinet Ortiz, quien ha estado principalmente a cargo del cuidado y de la administración de los bienes de los padres de las partes y personas mayores de edad.

3. El 20 de febrero de 2020, el Sr. Gabriel Rafael Espinet Colón otorgó una Escritura de Poder Duradero ante el Notario Miguel Oppenheimer, nombrando a Lourdes Espinet Ortiz como su apoderada.

4. Posteriormente, el 25 de febrero de 2020, la Sra. Ana Sylvia Ortiz Molina otorgó una Escritura de Poder Duradero ante el Notario Miguel Oppenheimer, nombrando a Lourdes Espinet como su apoderada.

5. El 10 de noviembre de 2023, los señores Gabriel Rafael Espinet Colón y Ana Sylvia Ortiz Molina otorgaron sendas escrituras de Revocación de Poder ante la Notaria Magda V. Alsina Figueroa.

6. El 3 de diciembre de 2023 el Dr. Eugenio Barbosa emitió una certificación de la cual surge lo siguiente en cuanto al Sr. Gabriel R. Espinet Colón:

   *"I hereby certify the following facts based on the patient's record: he is 96 years old and suffers from Alzheimer's Disease and dementia and is at present taking Donepezil (Aricept) 10 mg and is not capable, due to his advances age and mental status, to handle his finances."*

7. Ese mismo día, el señor Espinet fue atendido por el Dr. Barbosa y de las notas de progreso del galeno se desprende que el señor Espinet padece de la enfermedad de Alzheimer y de demencia.

8. No obstante, también surge que para el 3 de diciembre de 2023 el señor Espinet aparentaba tener capacidad o

---

[18] *Íd.*, Anejo XIX, pág. 303.

competencia para reconocer y entender la información que se le había provisto y que verbalizó entender y estar de acuerdo con el plan de acción.

9. El codemandante Raphael Espinet, ha hecho publicaciones en su la [sic] red social de Facebook de las cuales surge que al menos desde el 14 de julio de 2024, este se encontraba mercadeando su propiedad sita el Villa Paz, Trujillo Alto, PR.

10. También, surge que el mismo reside en Sarasota, Florida en Lakewood Ranch.

11. En la declaración jurada que acompaña su Oposición, el codemandante Raphael Espinet sostiene que no tiene intención de vivir en la Florida hasta que haya desempeñado su puesto de tutor de sus padres Gabriel Rafael Espinet Colón y Ana Sylvia Ortiz Molina.

12. Gabriel Rafael Espinet Colón y Ana Sylvia Ortiz Molina fueron emplazados conforme a disponen [sic] las Reglas de Procedimiento Civil.[19]

Por otro lado, el TPI indicó que existía controversia sobre si la señora Ortiz Molina y el señor Espinet Colón estaban capacitados al momento de la otorgación de la escritura de revocación del poder duradero otorgado a la apelada. No obstante, procedió a desestimar, con perjuicio, el caso.

Inconforme con ese dictamen, la parte apelante presentó una fundamentada *Solicitud de Determinaciones Adicionales de Hechos y Reconsideración* el 15 de octubre de 2024,[20] la cual el TPI denegó mediante una Orden emitida el 18 de octubre de 2024, y notificada y archivada digitalmente en autos el mismo día.[21]

Insatisfecha, la parte apelante presentó ante nos un recurso de apelación el 28 de noviembre de 2024, y le imputó al foro primario los siguientes señalamientos de error:

**PRIMER SEÑALAMIENTO DE ERROR**: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DICTAR SENTENCIA SUMARIA DESESTIMANDO LA PETICIÓN CON PERJUICIO EN TODOS SUS EXTREMOS.

**SEGUNDO SEÑALAMIENTO DE ERROR**: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL BASAR LA DESESTIMACI[Ó]N CON PERJUICIO EN UNA "POSIBILIDAD O CREENCIA" DE LA VALIDEZ DE LAS REVOCACIONES DE PODER EL CUAL ERA UN ASUNTO QUE NO ESTABA SUB JUDICE.

---

[19] *Íd.*, págs. 299-300.
[20] *Íd.*, Anejo XX, págs. 305-321.
[21] *Íd.*, Anejo XXI, pág. 322.

**TERCER SEÑALAMIENTO DE ERROR**: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DETERMINAR QUE PROCEDA ATENDER LAS PETICIONES DE INCAPACIDAD Y TUTOR DE FORMA SEPARADA, Y DESESTIMAR CON PERJUICIO LA PETICIÓN CONJUNTA.

**CUARTO SEÑALAMIENTO DE ERROR**: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL NO TOMAR MEDIDAS PROVISIONALES PARA LA PROTECCIÓN DE LOS ADULTOS MAYORES Y DEJARLOS EN UN LIMBO JURÍDICO.

En síntesis, la parte apelante sostuvo que el foro primario incidió al declarar Ha Lugar la solicitud de sentencia sumaria presentada por la apelada cuando tenía defectos de forma y existían controversias de hechos materiales tales como aquellos que se basaron en la certificación médica del doctor Barbosa sobre la condición mental de su progenitor. Además, arguyó la parte apelante que no procedía la desestimación con perjuicio la solicitud conjunta de incapacidad y nombramientos de tutor del señor Espinet Colón y la señora Ortiz Molina, sino que había que atenderlas en pleitos independientes o separados para luego consolidarlos, velando siempre por el bienestar y mejor interés de los adultos de mayor edad. Con relación a la Orden de Protección bajo la Ley Núm. 121-2019, *supra*, indicó que tampoco debió desestimarse ante las alegaciones de explotación económica y ante las peticiones de la parte apelante y la Procuradora se presentara un informe social con el fin de investigar las alegaciones y en beneficio del señor Espinet Colón y la señora Ortiz Molina. Aduce que el TPI debió tomar medidas cautelares.

Por su parte, el 18 de diciembre de 2024, la apelada radicó una *Oposición a Escrito de Apelación* en el que expuso que el foro primario no erró al dictar sentencia sumaria. También indicó que la evaluación de la idoneidad de los candidatos a tutor procedía luego de atendida la solicitud de incapacidad; y que la parte apelante no presentó evidencia para la emisión de las órdenes protectoras. Sobre el poder duradero, la apelada enfatizó que a pesar de que el foro

primario albergaba dudas sobre la validez de la revocación de los poderes duraderos, dicho asunto no se encontraba *sub judice* al caso de epígrafe por versar sobre incapacidad y nombramiento de tutor. Sin embargo, arguyó que la parte interesada y legitimada podía impugnar dicha revocación en un pleito aparte y una vez atendido, no existía impedimento para solicitar la incapacidad y nombramiento de tutor.

A pesar de haberle otorgado un término para presentar un alegato en oposición sobre los méritos del recurso, la Oficina del Procurador General de Puerto Rico, en representación de la Procuradora de Asuntos de Familia, presentó una *Solicitud de Desestimación* el 18 de diciembre de 2024 en la que planteó que la *Solicitud de Determinaciones Adicionales de Hecho y Reconsideración* incumplió crasamente con no haber incluido de forma particularizada y específica los hechos y el derecho que debe ser reconsiderado, según la Regla 47 de Procedimiento Civil, *supra*, R. 47. Por ende, sostuvo que el término para recurrir ante este Honorable Tribunal no quedó interrumpido y la presentación del recurso de apelación fue tardío.

En adelante, pormenorizaremos el derecho aplicable a la controversia del recurso de epígrafe.

**III.**

**A.**

La Regla 36.1 de Procedimiento Civil, *supra*, R. 36.1, establece el mecanismo procesal de la sentencia sumaria. El propósito de esta regla es facilitar la solución justa, rápida y económica de litigios civiles en los cuales no existe controversia real y sustancial de hechos materiales que no requieren ventilarse en un juicio plenario. ***Rodríguez García v. UCA***, 200 DPR 929, 940 (2018); ***Bobé et al. v. UBS Financial Services***, 198 DPR 6, 20 (2017); ***SLG Zapata-Rivera v. J.F. Montalvo***, 189 DPR 414, 430 (2013). Mediante este

procedimiento, una parte puede solicitar que el tribunal dicte sentencia sumaria de la totalidad de la reclamación o de parte de esta, y de esta forma se promueve la descongestión de calendarios. *Vera v. Dr. Bravo*, 161 DPR 308, 331-332 (2004).

Asimismo, el mecanismo de sentencia sumaria solo está disponible para la disposición de aquellos casos que sean claros; cuando el tribunal tenga ante sí la verdad de todos los hechos esenciales alegados en la demanda; y que solo reste por disponer las controversias de derecho existentes. *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 DPR 881, 911-912 (1994). Al evaluarse los méritos de una solicitud de sentencia sumaria, el juzgador debe actuar guiado por la prudencia, consciente en todo momento de que su determinación puede privar a una de las partes de su día en corte. *León Torres v. Rivera Lebrón,* 204 DPR 20, 44 (2020). De la mano con este precepto del debido proceso de ley, el juzgador deberá utilizar el principio de liberalidad a favor del opositor de la moción, lo cual implica que, de haber dudas sobre la existencia de controversias de hechos materiales, entonces deberán resolverse a favor de la parte que se opone a la moción de sentencia sumaria. *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 138 (2015); *Ramos Pérez v. Univisión*, 178 DPR 200, 216-217 (2010).

Para prevalecer en una moción de sentencia sumaria, su promovente tiene que establecer su derecho con claridad y debe demostrar que no existe controversia en cuanto a ningún hecho material, o sea, ningún elemento de la causa de acción. *Meléndez González et al. v. M. Cuebas*, supra, pág. 110. Por hechos materiales se entienden aquellos que pueden afectar el resultado de una reclamación de acuerdo con el derecho sustantivo. *Ramos Pérez v. Univisión*, supra, pág. 213. Además:

> [U]na controversia no es siempre real o sustancial, o genuina. La controversia debe ser de una calidad suficiente como para que sea necesario que un juez la dirima a través

de un juicio plenario. La fórmula, debe ser, por lo tanto, que la moción de sentencia sumaria adecuadamente presentada sólo puede negarse si la parte que se opone a ella presenta una oposición basada en hechos que puedan mover a un juez a resolver a su favor. Si el juez se convence de que no existe una posibilidad razonable de que escuchar lo que lee no podrá conducirlo a una decisión a favor de esa parte, debe dictar sentencia sumaria. *Íd.,* págs. 213-214 *citando a* P. E. Ortiz Álvarez, *Hacia el uso óptimo de la sentencia sumaria,* 3 (Núm. 2) Forum 3, 8 (1987).

En suma, deberá demostrar que: (1) no es necesario celebrar una vista; (2) el demandante no cuenta con evidencia para probar algún hecho sustancial; y (3) procede como cuestión de derecho. R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil,* 6ª ed. rev., San Juan, Ed. LexisNexis, 2017, pág. 317.

En contraste, el oponente a la moción de sentencia sumaria está obligado a establecer que existe una controversia que sea real en cuanto a algún hecho material a la controversia y, en ese sentido, no es cualquier duda la suficiente para derrotar la solicitud. ***Meléndez González et al. v. M. Cuebas***, supra. En efecto, la duda debe ser tal que permita concluir que existe una controversia real y sustancial sobre los hechos materiales. Íd., citando a ***Ramos Pérez v. Univisión***, supra, pág. 214. De esta manera, central entre las responsabilidades de la parte promovida se encuentra que debe puntualizar los hechos propuestos que pretende controvertir, haciendo referencia a la prueba específica que sostiene su posición. ***León Torres v. Rivera Lebrón,*** supra, pág. 44. Es decir, "la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa". Íd. De esta forma, no puede descansar en meras aseveraciones o negaciones de sus alegaciones, sino que debe proveer contradeclaraciones juradas y documentos que sustenten los hechos materiales en disputa. ***SLG Zapata-Rivera v. JF Montalvo***, supra; ***Ramos Pérez v. Univisión***, supra, pág. 215; ***Cruz Marcano v. Sánchez Tarazona***, 172 DPR 526, 550 (2007).

**En síntesis, ha quedado establecido que los tribunales no podrán dictar sentencia sumaria en cuatro (4) situaciones: (1) cuando existan hechos materiales y esenciales controvertidos**; (2) cuando existen alegaciones afirmativas en la demanda sin refutar; (3) **cuando surge de los propios documentos que acompañan la moción en solicitud de sentencia sumaria que existe una controversia sobre algún hecho material o esencial**; o (4) cuando no procede como cuestión de Derecho. *Oriental Bank v. Perapi*, 192 DPR 7, 26-27 (2014).

Entretanto, la Regla 36.3 de Procedimiento Civil, *supra*, R. 36.3, establece el procedimiento para la consideración de la moción de sentencia sumaria, así como el contenido de la moción y de la contestación de la parte promovida. Respecto a la moción solicitando que se dicte una sentencia sumaria, la Regla 36.3(a) de Procedimiento Civil, *supra*, dispone que tendrá que desglosar lo siguiente:

> (1) una exposición breve de las alegaciones de las partes;
> (2) los asuntos litigiosos o en controversia;
> (3) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria;
> (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;
> (5) las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable, y
> (6) el remedio que debe ser concedido.

Por otra parte, la Regla 36.3(b) de Procedimiento Civil, *supra*, R. 36.3(b), prescribe que la contestación a la moción de sentencia sumaria debe contener, además de los sub incisos (1), (2) y (3) del inciso (a): una relación de los hechos esenciales y pertinentes que están en controversia, con referencia a los párrafos enumerados por la parte promovente y con indicación de la prueba en la que se establecen esos hechos; una enumeración de los hechos que no

están en controversia; y las razones por las cuales no se debe dictar la sentencia, argumentando el derecho aplicable.

De otra parte, en ***Meléndez González et al. v. M. Cuebas***, supra, el Tribunal Supremo delineó el estándar que el Tribunal de Apelaciones debe utilizar para revisar una denegatoria o una concesión de una moción de sentencia sumaria.

En primer lugar, reafirmó que el Tribunal de Apelaciones se encuentra en la misma posición que el TPI al momento de revisar solicitudes de sentencia sumaria, siendo su revisión una *de novo* y teniendo la obligación de regirse por la Regla 36 de Procedimiento Civil, *supra*, R. 36, y los criterios que la jurisprudencia le exige al foro primario. ***Meléndez González et al. v. M. Cuebas***, supra, pág. 115. Asimismo, deberá examinar el expediente de la manera más favorable hacia la parte promovida, llevando a cabo todas las inferencias permisibles a su favor. Íd. Ahora bien, reconoció que el foro apelativo está limitado, toda vez que no podrá tomar en consideración evidencia que las partes no presentaron ante el foro primario, ni podrá adjudicar los hechos materiales en controversia. Íd.

En segundo lugar, prescribió que el Tribunal de Apelaciones deberá revisar que tanto la moción en solicitud de sentencia sumaria, como la oposición, cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, *supra*. ***Meléndez González et al. v. M. Cuebas***, supra, pág. 118.

En tercer lugar, mandató que, ante la revisión de una sentencia dictada sumariamente, el Tribunal de Apelaciones deberá revisar si en realidad existen hechos materiales en controversia y, de haberlos, estará obligado a exponer específicamente cuáles hechos materiales están en controversia y cuáles no, en cumplimiento con la Regla 36.4 de Procedimiento Civil, *supra*, R. 36.4. ***Meléndez González et al. v. M. Cuebas***, supra, pág. 118.

En cuarto lugar, dispuso que, si encuentra que los hechos materiales realmente no están en controversia, entonces el Tribunal de Apelaciones deberá revisar *de novo* si el foro primario aplicó correctamente el Derecho. Íd., pág. 119.

**B.**

La Ley Núm. 121-2019, *supra*, "reconoce la responsabilidad del Estado de mejorar las condiciones de vida de la población de adultos mayores y, además, garantizar el bienestar de éstos", y "de proveer, hasta donde sus medios, recursos y situación fiscal lo hagan factible, las condiciones adecuadas que promuevan en los adultos mayores el goce de una vida plena y el disfrute de sus derechos naturales, humanos y legales". Artículo 2 de la Ley Núm. 121-2019, *supra*, sec. 1512. Del mismo modo, a través de esta ley, "se refuerza la responsabilidad del Estado en preservar la integridad física y emocional de los adultos mayores, a los fines de fortalecer y hacer cumplir la política pública dirigida hacia esta población, mediante los preceptos establecidos en esta Ley". *Íd.*

Tal como se desprende del Artículo 7 de la Ley Núm. 121-2019, *supra*, sec. 1517, el Departamento de la Familia tiene el deber de tomar aquellas medidas de prevención y supervisión con el propósito de que la familia participe en la atención de los adultos mayores en una situación de riesgo o desamparo, en acuerdo de actuación con las dependencias gubernamentales. También ostenta la facultad para intervenir en todas las situaciones de maltrato donde se le refiera una situación de maltrato contra un adulto mayor; y será responsable de la prevención, identificación, investigación, supervisión protectora y tratamiento social de todo adulto mayor que sea víctima de maltrato en todas sus modalidades; y es el ente central en el en el aseguramiento del cumplimiento de la nueva legislación con el apoyo y cooperación de las agencias e instrumentalidades del Estado. Artículos 7-8 de la Ley Núm. 121-

2019, *supra*, secs. 1517, 1518. Una vez el Departamento de la Familia y la Oficina del Procurador de las Personas de Edad Avanzada advienen en conocimiento o sospecha de que un adulto mayor podría ser víctima de maltrato deberán informarle inmediatamente al Negociado de la Policía de Puerto Rico y colaborar y trabajar en coordinación con esta. Artículo 19 de la Ley Núm. 121-2019, *supra*, sec. 1529.

De igual modo, los familiares de un adulto mayor tienen un deber de cumplir, de forma constante y permanente, con hacerse cargo de cada uno de los adultos mayores que formen parte de la familia, y proporcionarán los elementos necesarios para su atención integral. Entre las responsabilidades que tienen los familiares se encuentran las siguientes:

> b) Fomentar la convivencia familiar cotidiana, donde el adulto mayor participe activamente, y promover al mismo tiempo los valores que incidan en sus necesidades afectivas, de protección y de apoyo.
> . . . .
> d) Evitar que alguno de sus integrantes realice cualquier acto de abandono, desamparo, marginación, discriminación, abuso, explotación, aislamiento, violencia o los que pongan en riesgo su persona, bienes y derechos.
> . . . .
> f) Fomentar su independencia, respetar sus decisiones y mantener su privacidad.
> . . . .
> i) Asegurarse que la familia cumpla con su responsabilidad de procurar que sus miembros adopten pautas de conducta y acciones que favorezcan a lo largo de su vida un desarrollo individual saludable y productivo teniendo presente el envejecimiento.
> . . . .

Artículo 6 de la Ley Núm. 121-2019, *supra*, sec. 1516.

En atención a estas funciones y deberes del Departamento de la Familia, es meritorio definir adulto mayor, explotación financiera, maltrato y orden de protección. Un adulto mayor es toda persona que posea sesenta (60) años o más de edad. Artículo 3 (1) de la Ley Núm. 121-2019, *supra*, sec. 1513. Cuando existe un uso impropio de los fondos, la propiedad o de los recursos de los adultos mayores por otras personas, sin limitarse a "fraude, falsas pretensiones, malversaciones de fondos, conspiración, falsificación de

documentos, falsificación de expedientes o récords, coerción, transferencia de propiedad, o negación de acceso a bienes" ello constituye explotación financiera. Artículo 3 (9) de la Ley Núm. 121-2019, *supra*, sec. 1513. El maltrato de un adulto mayor consiste en trato cruel o negligente hacia dicha persona que le cause daño o lo exponga a un riesgo de sufrir daño a su salud, bienestar y sus bienes incluyendo abuso financiero, emocional, apropiación ilegal, fraude, entre otros. Artículo 3 (15) de la Ley Núm. 121-2019, *supra*, sec. 1513. Una de las herramientas disponibles es la orden de protección la cual constituye un "mandato expedido por escrito bajo el sello de un tribunal con competencia y jurisdicción, en el cual se dictan las medidas a una persona para que se abstenga de incurrir o llevar a cabo determinados actos o conducta constitutiva de maltrato a un adulto mayor". Artículo 3 (19) de la Ley Núm. 121-2019, *supra*, sec. 1513.

Cualquier persona particular interesada en el bienestar de un adulto mayor que haya sido víctima de cualesquiera de los tipos de maltrato puede radicar una orden de protección en el tribunal sin que sea necesaria la radicación previa de una denuncia o acusación. Artículo 9 de la Ley Núm. 121-2019, *supra*, sec. 1519. Esto es, inclusive a favor de cualquier persona cuando esta sufra de incapacidad física y/o mental. Artículo 11 de la Ley Núm. 121-2019, *supra*, sec. 1521.

El Tribunal podrá emitir una orden de protección ex parte o a solicitud de parte interesada cuando determine que "existen motivos suficientes para creer que la parte peticionaria ha sido víctima de maltrato físico, mental o psicológico, hostigamiento, coacción, intimidación, daño emocional o cualquier otro delito". Artículo 9 de la Ley Núm. 121-2019, *supra*, sec. 1519. Entre las medidas que puede incluir dicha orden de protección se encuentran:

**(a)** Ordenar a la parte peticionada desalojar la residencia que comparte con la parte peticionaria, independientemente del derecho que se reclame sobre la misma.

**(b)** Ordenar a la parte peticionada abstenerse de molestar, hostigar, perseguir, intimidar, amenazar o de cualquier otra forma interferir con el ejercicio de los derechos que se le reconocen en esta Ley.

. . . .

**(e)** Prohibir a la parte peticionada disponer en cualquier forma de los bienes de la parte peticionaria.

. . . .

**(f)** Ordenar cualesquiera de las medidas provisionales respecto a la posesión y uso de la residencia de las partes y sobre aquellos bienes muebles.

**(g)** Ordenar a la parte peticionada pagar una indemnización económica de su caudal por los daños que fueren causados por la conducta constitutiva de maltrato y/o negligencia. Dicha indemnización podrá incluir, pero no estará limitada a compensación por gastos de mudanza, gastos por reparaciones a la propiedad, gastos legales, gastos médicos, psiquiátricos, psicológicos, de consejería, orientación, alojamiento, albergue, asistencia tecnológica y otros gastos similares, sin perjuicio de otras acciones civiles a las que tenga derecho la parte peticionaria.

. . . .

**(i)** Emitir cualquier orden necesaria para dar cumplimiento a los propósitos y política pública de esta Ley.

Artículo 9 de la Ley Núm. 121-2019, *supra*, sec. 1519.

Según dispone el Artículo 10 de la Ley Núm. 121-2019, *supra*, sec. 1520, "**[c]ualquier juez del Tribunal de Primera Instancia podrá dictar una orden de protección conforme a esta Ley.** Toda orden de protección podrá ser revisada en cualquier sala de superior jerarquía". (Énfasis suplido). Ello es cónsono con nuestro sistema judicial unificado en el cual "la radicación de un asunto en una sala de distinta competencia no priva a dicho foro de jurisdicción: la falta de competencia no es defensa válida para la desestimación de la acción". *Seijo v. Mueblerías Mendoza*, 106 DPR 491, 493 (1977). En otras palabras, cuando está envuelto el traslado de la causa de acción, procede remitirlo al tribunal correspondiente por medio del magistrado o a instancia de parte. *Íd.*, pág. 494.

Cónsono con lo anterior, el Artículo 21 de la Ley Núm. 121-2019, *supra*, sec. 1531, dispone que:

> **Todo adulto mayor, por sí, por su tutor legal o por medio de un funcionario público, policía o persona particular interesada en su bienestar, podrá acudir** ante la Unidad para Investigar y Procesar Violaciones de Derechos Civiles del Departamento de Justicia, a la oficina del Fiscal de Distrito del Centro Judicial más cercano a la residencia del adulto **mayor o a cualquier sala del Tribunal de Primera Instancia del distrito judicial donde resida el adulto mayor para reclamar cualquier derecho o beneficio estatuido en esta Ley o para solicitar que se suspenda una actuación que contravenga las disposiciones de esta.** Los fiscales de distrito y los tribunales concederán prioridad a las acciones iniciadas en virtud de este Artículo. **Los tribunales tendrán facultad para nombrar al adulto mayor representación legal o un defensor judicial, y dictar cualquier orden o sentencia conforme a derecho y que sea necesaria para llevar a cabo las disposiciones de esta Ley.** El incumplimiento de las Órdenes y sentencias dictadas por el tribunal en virtud de este Artículo constituirá desacato civil.

(Énfasis suplido).

## C.

Es norma conocida que en nuestro sistema judicial existe una presunción de capacidad mental de la persona natural mayor de edad de obrar por sí misma. Artículo 100 del Código Civil de 2020, *supra*, sec. 5601; ***González Hernández v. González Hernández***, 181 DPR 746, 759 (2011); ***Rivera y Otros v. Bco. Popular***, 152 DPR 140, 157 (2000). Solo se admite la sentencia de incapacitación absoluta o restricción parcial de capacidad por las causas y la extensión que determina la ley en contra de dicha presunción. Artículo 100 del Código Civil de 2020, *supra*, sec. 5601. Una de las causas de incapacitación absoluta está "la persona que padece una condición física o mental que le imposibilita cuidar de sus propios asuntos o intereses, mientras se encuentra en este estado". Artículo 102 (b) del Código Civil de 2020, *supra*, sec. 5612. No obstante, los actos jurídicos que realizan estas personas:

> [A]ntes de la declaración de incapacidad y aún durante su estado de incapacitación, si actúan en estado lúcido, se presumen válidos respecto de los terceros que desconocen la condición y actúan de buena fe.

> En caso de ausencia total de discernimiento, es de aplicación lo dispuesto en este Código para los actos jurídicos en que falta la voluntad.

Artículo 103 del Código Civil de 2020, *supra*, sec. 5613.

Asimismo, constituye causa de incapacitación parcial cuando una persona tiene restringida su capacidad de obrar por sí misma en los asuntos que afectan sus bienes o intereses personales, con una de las limitaciones expresamente establecidas por ley o la sentencia de incapacitación, cuando una persona padece de discapacidad mental moderada y que tiene una vida útil e independiente. Artículo 104 (b) del Código Civil de 2020, *supra*, sec. 5614. Los actos jurídicos realizados por una persona en las circunstancias anteriores:

> [A]ntes de la sentencia que restringe su capacidad de obrar, no pueden ser impugnados por razón de su incapacitación, a menos que se pruebe vicio en la voluntad.
> Los actos posteriores a la citación y el emplazamiento para el proceso de incapacitación son impugnables, si de ellos resulta lesión grave para los intereses que la sentencia coloca bajo tutela.

Artículo 105 de Código Civil de 2020, *supra*, sec. 5615.

Según el Artículo 110 de Código Civil de 2020, *supra*, sec. 5631, entre las personas que pueden solicitar la declaración de incapacitación absoluta o parcial de una persona mayor de edad o de un menor emancipado es "cualquier pariente con plena capacidad de obrar que tenga derecho a sucederle o el defensor judicial que el tribunal designe". Véase además, ***González Hernández v. González Hernández***, supra, págs. 760-761. Sin embargo, cuando la capacidad de obrar de una persona natural se limita absoluta o parcialmente, procede el nombramiento de un tutor para que le asista en los actos ordinarios de la vida civil y la represente legalmente en las relaciones jurídicas en las que sea parte. Artículo 101 de Código Civil de 2020, *supra*, sec. 5611.

El Tribunal puede adoptar provisionalmente aquellas medidas cautelares necesarias para la seguridad de la persona y de los bienes

del alegado incapaz, hasta que se dicta sentencia. Artículo 116 de Código Civil de 2020, *supra*, sec. 5641. Previo a dictar sentencia, y de imponer las limitaciones especiales que procedan o de nombrar el tutor, el tribunal debe requerir un informe sobre las condiciones socioeconómicas del alegado incapaz. Este informe estará a cargo de una persona cualificada a pesar de no ser funcionaria del tribunal. Artículo 117 de Código Civil de 2020, *supra*, sec. 5642; véase además, Artículo 123 de Código Civil de 2020, *supra*, sec. 5662. Posterior a dictar la sentencia, el tribunal puede exigir del tutor que informe de forma periódica sobre la situación del incapaz y del estado de la administración de los bienes tutelados. Artículo 118 de Código Civil del Puerto Rico de 2020, *supra*, sec. 5643.

La tutela es aquella que le "confiere a una persona natural o jurídica la autoridad para representar y asistir a otra que, sin estar sujeta a la patria potestad, tiene restringida la capacidad de obrar por razón de su minoridad o por las causas que declara la ley". Artículo 122 de Código Civil de 2020, *supra*, sec. 5661. El propósito de esta figura es la guarda y representación de una persona incapaz y la administración de sus bienes, o solamente dicha administración, según las limitaciones que determine la sentencia y las exigencias del régimen tutelar al que queda sometida. Además, sus funciones constituyen un deber, en beneficio del tutelado y bajo la salvaguarda de la autoridad judicial. *Íd*; véase además, Artículo 124 de Código Civil de 2020, *supra*, sec. 5663; ***González Hernández v. González Hernández***, supra, pág. 759. Cuando el incapaz es mayor de edad, corresponde la tutela en el siguiente orden preferente:

> (a) al cónyuge, siempre que convivan y conserven la relación marital a la fecha de la declaración;
> (b) a cualquiera de los progenitores, si los hijos del incapaz son menores de edad;
> (c) a cualquiera de los hijos;
> (d) a cualquiera de los abuelos;
> (e) a cualquiera de los hermanos;

(f) a cualquier persona natural idónea, relacionada por lazos afectivos o solidarios con el incapaz, que quiera y pueda asumir responsablemente el cargo; o

(g) a cualquier persona jurídica dedicada a este ejercicio tutelar.

La designación se hace de acuerdo al interés óptimo del incapaz.

Artículo 134 de Código Civil de 2020, *supra*, sec. 5683.

De concurrir dos o más personas en un mismo orden de prelación para el nombramiento del tutor, el Tribunal debe hacer la designación conforme al interés óptimo del tutelado, a menos que sea conveniente que compartan simultáneamente el cargo. Artículo 135 de Código Civil de 2020, *supra*, sec. 5684. Ahora bien, si el incapaz puede discernir sobre las consecuencias de su propia incapacitación y expresar una opinión de modo coherente y claro, dará su parecer sobre el nombramiento del tutor. En dicho caso, el Tribunal podrá seleccionar a la persona que prefiera el incapaz, "si es idónea para ejercer el cargo y para atender los asuntos colocados bajo tutela, y si conviene al interés óptimo del incapaz". Artículo 136 de Código Civil de 2020, *supra*, sec. 5685.

Podrá ser tutor la persona natural que goza del pleno ejercicio de sus derechos civiles y que no está inhabilitada por alguna de las causas establecidas en el Código Civil de 2020, *supra*. Incluso, podrá ser tutor también la persona jurídica que no tenga como finalidad lucrativa y entre cuyos fines constitutivos figure la protección de menores e incapaces. Artículo 143 de Código Civil de 2020, *supra*, sec. 5701. Sin embargo, no puede ser tutor:

**(a)** la persona que está privada o suspendida del ejercicio de la patria potestad por resolución judicial;

**(b)** la persona que ha sido privada de una tutela anterior por las causas que dispone la ley o la persona que está sujeta a ella;

**(c)** la persona sentenciada a cualquier pena privativa de libertad, mientras está cumpliendo la sentencia;

**(d)** la persona convicta por delito grave o menos grave que implica depravación moral o que exhibe conducta que hace suponer fundamentadamente que no desempeñará bien la tutela;

**(e)** la persona que tiene conflicto de interés con el menor o el incapaz, mantiene un pleito o acción sobre el estado civil del menor o el incapaz o sobre la titularidad de sus bienes o le adeuda sumas de consideración;

**(f)** la persona quebrada no rehabilitada, salvo que la tutela sea de la persona;

**(g)** la persona que ha presentado maliciosa e injustificadamente alguna querella contra el menor o acusación criminal contra sus ascendientes o colaterales hasta el cuarto grado;

**(h)** la persona que no reside en Puerto Rico, a menos que al momento del nombramiento tenga al menor o al incapaz en su compañía o se trate de la tutela de bienes ubicados fuera del territorio o que pueden administrarse desde cualquier lugar; y

**(i)** la persona excluida expresamente por los progenitores en testamento o escritura pública, salvo que el tribunal lo estime conveniente, en beneficio del menor o del incapaz.

Artículo 144 de Código Civil de 2020, *supra*, sec. 5702.

Dicho tutor entrará en el desempeño de su cargo como tal y realizará válidamente las funciones que le son propias, después de la inscripción del nombramiento en e Registro de Tutelas. Artículo 148 de Código Civil de 2020, *supra*, sec. 5706. Cónsono con ello, las delimitaciones del ejercicio de la tutela están recogido en la Sección Quinta del Capítulo VIII sobre tutela.

**IV.**

En el caso de marras debemos determinar si procedía declarar Ha Lugar la *Moción de Sentencia Sumaria* presentada por la apelada y, consecuentemente, desestimar con perjuicio la solicitud de incapacidad y tutela de dos adultos mayores que han sido objeto de varios pleitos entre sus hijos. De igual modo, nos toca resolver si procedía declarar No Ha Lugar la solicitud una Orden de Protección en contra de la apelada, según la Ley Núm. 121-2019, *supra*.

Según el TPI, la Orden de Protección presentada bajo la Ley Núm. 121-2019, *supra*, en contra de la apelada y en beneficio del señor Espinet Colón y la señora Ortiz Molina debió de haberse radicado en una Sala Municipal y no en una Sala Superior como ocurrió en el pleito de marras, por lo que desestimó dicha causa de acción.

Mediante la *Sentencia* apelada, el foro primario también declaró Ha Lugar la *Moción de Sentencia Sumaria* presentada por la apelada con relación a la causa de acción sobre petición de

incapacidad y tutela, y, consecuentemente, desestimó *con perjuicio* la solicitud conjunta para declarar incapaz y nombrarle un tutor legal al señor Espinet Colón y a la señora Ortiz Molina. Sin embargo, expresó que:

> Se aclara, no obstante, que una vez atendida la validez de las revocaciones de los poderes duraderos en pleitos individuales e incoados a esos fines y la misma ser sostenida judicialmente, no existe impedimento para que el particular que lo entienda procedente solicite en pleitos individuales los remedios solicitados en este caso.[22]

En ese mismo dictamen, el foro primario estableció doce (12) determinaciones de hechos incontrovertidos, y a pesar de declarar Ha Lugar la solicitud de sentencia sumaria, dicho Tribunal también estableció hechos que faltan por probar; a saber, si la señora Ortiz Molina y el señor Espinet estaban capacitados al momento de la otorgación de la escritura de revocación del poder duradero otorgado a la apelada.

En desacuerdo, la parte apelante sostuvo que existían hechos en controversia inclusive aquellos que se basaron en la certificación médica del doctor Barbosa. Además, que procedía atender la solicitud de incapacidad y nombramiento de tutor del señor Espinet Colón y la señora Ortiz Molina, aunque fuera en pleitos independientes o separados para luego consolidarlos, velando siempre por el bienestar y mejor interés de los adultos de mayor edad. Asimismo, indicó que, ante las peticiones de la parte apelante y la Procuradora de presentar un informe social con el fin de investigar las alegaciones y en beneficio de ambos, y las alegaciones sobre explotación económica, el Tribunal debió de haber continuado el pleito con relación a la Orden de Protección bajo la Ley Núm. 121-2019, *supra.*

Por su parte, la apelada arguyó que el TPI actuó correctamente, pues, a pesar de que el foro primario albergaba

---

[22] *Íd.*, Anejo XIX, pág. 303.

dudas sobre la validez de la revocación de los poderes duraderos, dicho asunto no se encontraba *sub judice* en el caso de epígrafe por versar sobre incapacidad y nombramiento de tutor. Sostuvo que una vez atendido dicho asunto, no existía impedimento para solicitar la incapacidad y nombramiento de tutor. Por otro lado, indicó que la parte apelante no había presentado prueba en apoyo a la emisión de las órdenes de protección.

El Procurador General presentó una Solicitud de Desestimación en la que planteó que la *Solicitud de Determinaciones Adicionales de Hecho y Reconsideración* incumplió crasamente con la Regla 47 de Procedimiento Civil, *supra*, y, por ende, el término para recurrir ante este Honorable Tribunal no quedó interrumpido y la presentación del recurso de apelación fue tardío. No expresó su posición en relación a los méritos del recurso.

Tras un análisis objetivo, sereno y cuidadoso del expediente del caso, en correcta práctica adjudicativa apelativa, resolvemos que erró el foro primario al desestimar la demanda y al declarar Ha Lugar la *Moción de Sentencia Sumaria*. Adviértase que del expediente y de la propia *Sentencia* apelada surgen hechos que están en controversia, por lo que no procedía resolver el caso de epígrafe sumariamente. Además, tampoco tomó ninguna medida cautelar en relación a los dos adultos mayores que se encuentran en estado de indefensión.

Según **Meléndez González et al. v. M. Cuebas**, supra, el primer paso del estándar de revisión de las solicitudes de sentencia sumaria es revisar el expediente *de novo* de la forma más favorable para la parte que se opuso a la solicitud de sentencia sumaria, y aplicar los mismos criterios de la Regla 36 de Procedimiento Civil, *supra*. De igual modo, el segundo pilar exige que revisemos que tanto la petición de sentencia sumaria como su oposición cumplan con los requisitos de la Regla 36 de Procedimiento Civil, *supra*.

*Meléndez González et al. v. M. Cuebas*, supra, pág. 118. De una lectura cuidadosa del expediente, determinamos que tanto la *Moción de Sentencia Sumaria* como su oposición, cumplieron con los requisitos de la Regla 36 de Procedimiento Civil, *supra*. Por lo tanto, corresponde continuar al tercer criterio del aludido estándar de revisión apelativa sobre las solicitudes de sentencia sumaria.

El tercer paso conlleva revisar si en realidad existen hechos materiales en controversia. De haberlos, debemos cumplir con la exigencia establecida en la Regla 36.4 de Procedimiento Civil, *supra*, y exponer cuáles son los hechos materiales que están en controversia y cuáles son incontrovertidos. Surge del expediente y de la propia *Sentencia* apelada, que existen hechos en controversia. El TPI expresó que, "[e]n cuanto a Ana Sylvia Ortiz Molina, existe controversia en cuanto a si, en efecto, esta se encontraba capacitada al momento de que se otorgara la escritura de revocación de poder duradero otorgado a la Demandada, ocurre lo mismo que con Gabriel Rafael Espinet Colón".[23] Cónsono con ello, la parte apelante cuestionó la incapacidad de ambos adultos de mayor edad. Específicamente, la parte apelante detalló, en lo pertinente, los siguientes hechos como controvertidos:

    a. Existe controversia en cuanto a la incapacidad o grado de incapacidad de los adultos mayores, Gabriel Rafael Espinet Colón y Ana Sylvia Ortiz Molina.

    b. Existe controversia en cuanto a cuál es la persona más apta para ser nombrada tutor, en aras de garantizar el mejor bienestar económico y psicológico de don Gabriel Rafael Espinet Colón y doña Ana Sylvia Ortiz Molina, considerando todas las alegaciones y causas de acción de la demanda.

    . . . .[24]

De igual modo, las alegaciones sobre explotación económica, control financiero, médico y sobre la residencia del señor Espinet Colón y la señora Ortiz Molina no han sido refutadas con prueba,

---

[23] *Íd.*, Anejo XIX, pág. 302.
[24] *Íd.*, Anejo XVIII, págs. 269-270.

por lo cual también existe controversia en cuanto aquellas alegaciones. Existiendo hechos materiales en controversia, a tenor con el expediente ante nos, y en el ejercicio de los requerido a nivel apelativo, formulamos los siguientes hechos en controversia:

a. Existe controversia en cuanto a la incapacidad o grado de incapacidad de los adultos mayores, el señor Gabriel Rafael Espinet Colón y la señora Ana Sylvia Ortiz Molina.

b. Existe controversia de cuándo, si en algún momento, la capacidad del señor Gabriel Rafael Espinet Colón y de la señora Ana Sylvia Ortiz Molina se vio afectada.

c. Existe controversia para qué asuntos, si alguno, tiene capacidad para atender el señor Gabriel Rafael Espinet Colón y la señora Ana Sylvia Ortiz Molina, y para cuáles no.

d. Existe controversia en cuanto a cuál es la persona más apta para ser nombrada tutor, en aras de garantizar el mejor bienestar económico y psicológico del señor Gabriel Rafael Espinet Colón y de la señora Ana Sylvia Ortiz Molina.

e. Existe controversia sobre los posibles actos de explotación financiera del señor Gabriel Javier Espinet Ortiz y de la señora Lourdes Espinet Ortiz.

f. Existe controversia sobre si ocurrió el supuesto traspaso de la residencia y hogar seguro del señor Gabriel Rafael Espinet Colón y de la señora Ana Sylvia Ortiz Molina a favor de la señora Lourdes Espinet Ortiz, y las razones para ello. Está en controversia la capacidad de los adultos mayores.

g. Existe controversia sobre si el señor Raphael Eduardo Espinet Ortiz reside en Puerto Rico.

h. Existe controversia respecto a si la señora Lourdes Espinet Ortiz restringe las visitas de sus hermanos y sobre el alegado control médico, financiero y residencial que tiene ella sobre el señor Gabriel Rafael Espinet Colón y la señora Ana Sylvia Ortiz Molina.

i. Existe controversia sobre cómo, cuándo, por qué y dónde la señora Lourdes Espinet Ortiz adquirió su rol como tutora del señor Gabriel Rafael Espinet Colón y de la señora Ana Sylvia Ortiz Molina.

Ciertamente, no procedía declarar Ha Lugar la *Moción de Sentencia Sumaria* presentada por la apelada cuando existen dudas serias sobre la capacidad de dos adultos mayores con las edades de 97 y 91 años para regir sus personas y sus bienes, y sobre quienes los familiares y el Estado tienen obligaciones para salvaguardar el bienestar de ellos. Aunque la validez del poder duradero deba

presentarse en un pleito distinto al de marras, ello no es óbice para que el foro primario emita una determinación sobre la capacidad del señor Espinet Colón y la señora Ortiz Molina, y subsiguientemente determine quién es la persona más capaz y conveniente para ejercer la tutela. Es precisamente lo solicitado al TPI, que tome una determinación sobre la capacidad general de los adultos mayores. Por lo tanto, incidió el TPI al desestimar sumariamente la causa de acción sobre la solicitud de incapacidad y el nombramiento de tutela.

No hemos encontrado fundamento en derecho para que tengan que radicarse las acciones en pleitos independientes y luego consolidarse, según sugiere la Procuradora de Asuntos de Familia. Por el contrario, dicho proceder causaría una dilación innecesaria y contraria a los fines de dispensar justicia rápida, económica y eficiente a los adultos mayores que, ciertamente, son el eje de controversia entre sus hijos lo que no propende a su bienestar y a vivir con dignidad y paz los años que les quede de vida.

Con un adecuado manejo del caso por el TPI se puede cumplir cabalmente con los requisitos sustantivos y procesales de la causa de acción de declaración de incapacidad y designación de tutor.

Respecto a la desestimación de la Orden de Protección bajo la Ley Núm. 121-2019, *supra*, sostuvo la parte apelante que el foro primario debió de haberla atendido en beneficio de los adultos de mayor edad. Les asiste la razón.

Conforme pormenorizamos anteriormente, la Ley Núm. 121-2019, *supra*, ofrece diferentes remedios incluyendo la orden de protección. Esta puede presentarse en "**[c]ualquier juez** del Tribunal de Primera Instancia podrá dictar una orden de protección conforme a esta Ley". Artículo 10 de la Ley Núm. 121-2019, *supra*, sec. 1520. (Énfasis suplido). Además, una persona particular interesada en el bienestar del adulto mayor puede acudir "**a**

**cualquier sala del Tribunal de Primera Instancia del distrito judicial donde resida el adulto mayor** para reclamar cualquier derecho o beneficio estatuido en esta Ley o para solicitar que se suspenda una actuación que contravenga las disposiciones de esta". Artículo 21 de la Ley Núm. 121-2019, *supra*, sec. 1531. (Énfasis suplido). Dicha orden de protección podrá a su vez ser revisada por una sala de superior jerarquía. *Íd.* Incluso, es harto conocido que "la falta de competencia no es defensa válida para la desestimación de la acción". ***Seijo v. Mueblerías Mendoza***, supra, pág. 493. En dicho caso, la causa de acción debe trasladarse a la sala del Tribunal correspondiente.

Del texto claro de la ley surge que el Tribunal Superior tiene competencia para atender la orden de protección peticionada. Máxime cuando tiene a <u>todas</u> las partes necesarias bajo su jurisdicción.

En aras de la justicia, le corresponde al foro apelado atender todas las causas de acción presentadas en su sala, pues, ya los representantes legales de las partes comparecieron ante dicho Tribunal, y pudieron identificar, en principio, la prueba sobre las alegaciones de maltrato y explotación financiera que es pertinente a la Orden de Protección solicitada bajo la Ley Núm. 121-2019, *supra*. En su consecuencia, el foro primario tiene que inmediatamente atender la petición de la aludida Orden de Protección dándole prioridad en el calendario judicial.

Deberá emitir los remedios cautelares procedentes.

Por lo tanto, incidió el foro *a quo* al desestimar la solicitud de Orden de Protección bajo la Ley Núm. 121-2019, *supra*, presentada en contra de la apelada y en beneficio del señor Espinet Colón y la señora Ortiz Molina. También incidió al desestimar, con perjuicio, la acción en su totalidad.

**V.**

Se declara No Ha Lugar la *Solicitud de Desestimación* presentada el 18 de diciembre de 2024 por la Oficina del Procurador General de Puerto Rico, en representación de la Procuradora de Asuntos de Familia. La moción de determinaciones adicionales de hechos y de reconsideración cumple con lo exigido por nuestro ordenamiento jurídico.

Por todo lo antes expuesto, se *revoca* la *Sentencia* apelada. Consecuentemente, se devuelve el caso de epígrafe al foro primario para que atienda la solicitud de incapacidad y nombramiento de tutela junto a la Orden de Protección, al amparo de la Ley Núm. 121-2019, *supra,* toda vez que dicho Tribunal se encuentra en la mejor posición para resolver el pleito de forma justa, rápida y económica. Deberá ejercer un adecuado y expedito manejo del caso, a tenor con lo resuelto precedentemente.

Para ello, el TPI tiene que <u>inmediatamente</u> atender la petición de la Orden de Protección dándole prioridad en el calendario judicial y emitir los remedios cautelares procedentes. A tenor con lo dispuesto en la Regla 18 (A) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 18 (A), el TPI puede proceder de conformidad con lo aquí resuelto sin tener que esperar por nuestro mandato.

Lo acordó el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones